# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | |
|---|---|
| AUBREY BETTIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CV404-217 |
| ) | |
| McARTHUR HOLMES and ) | |
| LESLIE CASTOR, ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

Defendants have filed motions for summary judgment in the above action. Docs. 39, 54. Plaintiff has responded in opposition. Docs. 46, 61. Defendants have filed replies in support of their motions and plaintiff has responded to these filings as well. Docs. 48, 51, 63, 64. For the following reasons, defendants' motions for summary judgment should be GRANTED and plaintiff's complaint should be DISMISSED.

### I. Background

Plaintiff filed the instant action pursuant to 42 U.S.C. § 1983 on December 28, 2004, alleging that he received inadequate medical care at the

Chatham County Jail (CCJ) on account of defendants' delay in providing him with an eye examination and corrective lenses. Doc. 27. Plaintiff contends that he had poor vision when he arrived at CCJ on July 31, 2004 and that his vision has deteriorated on account of defendants' failure to provide him with prompt medical attention. Id. Plaintiff complains that the deterioration of his eyesight has caused him to suffer from "excruciating headaches." Id. Plaintiff alleges that he submitted a medical request on August 20, 2004 asking for an eye examination and corrective lenses, but that a triage nurse informed him on August 30, 2004 that only the jail or medical administrator could authorize such a request. Doc. 27. Plaintiff sent a letter to defendant Holmes, the jail administrator, stating that he had "very, very bad vision" and needed corrective lenses on September 11, 2004. Doc. 46, Ex. F. Plaintiff sent a similar letter to defendant Castor, the medical administrator, the following day. Id., Ex. G. Plaintiff filed two grievances concerning his request for an eye examination on September 15 and 27, 2004. Doc. 41, Ex. B (Poole Aff.); Doc. 46, Exs. A, C. Prison officials responded to the grievances by informing plaintiff that he needed to submit a medical request form so that they could schedule him an

appointment with the prison medical unit. Doc. 46, Exs. A, C. Plaintiff then filed another medical request on September 28, 2004, complaining of "extremely poor vision and astigmatism." Doc. 46, Ex. E. On October 1, 2004, plaintiff was examined by the prison physician, who determined that plaintiff's vision was stable, that there had not been any acute changes, and that plaintiff "may get glasses as need it [sic]." Doc. 46, Ex. I.

After this examination, plaintiff did not file another medical request concerning his vision until April 28, 2005. Doc. 41, Ex. B (Poole Aff.). In response to this request, defendant Holmes asked Cassandra Barnwell, plaintiff's Unit Counselor, to assist plaintiff in acquiring the funds necessary to pay for an out-of-prison eye examination and for corrective lenses if needed since the prison does not provide such services for deteriorating vision to inmates free of charge. Doc. 41, Ex. A (Holmes Aff.). To that end, Ms. Barnwell and plaintiff contacted plaintiff's mother, Alice Bettis, as well as plaintiff's cousin, Jermonica Thomas, to ask if either could provide funds to plaintiff. Doc. 46, Exs. J, K. When plaintiff was unable to secure financing from either relative, defendant Holmes made an exception to the prison's general policy and approved an eye examination for plaintiff.

Doc. 41, Ex. A. Plaintiff received an examination from a physician outside of the jail on July 15, 2005 and received eyeglasses on July 27, 2005. Doc. 41, Ex. B.

## II. Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure requires a court to enter summary judgment where the record, taken as a whole, establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "An issue of fact is 'material' if it might affect the outcome of the case under the governing laws. . . . It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Baker v. Sears, Roebuck & Co., 903 F.2d 1515, 1518 (11th Cir. 1990)(citations omitted).

The moving party "always bears the initial responsibility of informing the [trial] court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant has shown that the party bearing the burden of proof at trial

4

lacks evidence on an essential element of his claim, the burden of production shifts to the nonmoving party "to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting Rule 56(e)).

"Although reasonable inferences to be drawn from the facts must be viewed in the light most favorable to the non-moving party, that party 'must present affirmative evidence in order to defeat a properly supported motion for summary judgment' to show that there is a genuine issue for trial." Tidmore v. BP Oil Co./Gulf Products Div., 932 F.2d 1384, 1387 (11th Cir.), cert. denied, 502 U.S. 925 (1991)(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986)). A mere scintilla of evidence supporting the non-moving party's position will not fulfill its burden. Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990). The Court must consider the entire record in the case, not just those portions of the record which have been singled out for attention by the parties. Baker, 903 F.2d at 1515.

### III. Analysis

Section 1983 provides a private cause of action for persons whose

rights under the federal Constitution or laws have been violated by a person acting under the color of state law. 42 U.S.C. § 1983. Section 1983 is not a source of rights, but a means of vindicating federal rights. Albright v. Oliver, 510 U.S. 266, 271 (1994). Violations of state statutes or tortious conduct under state law do not constitute the type of injury for which § 1983 provides a remedy. In analyzing a § 1983 claim, a court must first "identify the specific constitutional right allegedly infringed." Id.; Graham v. Connor, 490 U.S. 386, 394 (1989). Here, plaintiff alleges that defendants violated the Eighth Amendment by delaying his receipt of an eye examination and corrective lenses, which caused his vision to deteriorate and caused him to suffer from severe headaches. Doc. 46.

The Eighth Amendment proscription of cruel and unusual punishment, made applicable to the states by the Fourteenth Amendment's Due Process Clause, imposes a constitutional obligation upon the states to provide necessary medical care to those whom it has incarcerated. Estelle v. Gamble, 429 U.S. 97, 103 (1976); Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995); Mandel v. Doe, 888 F.2d 783, 788 (11th Cir. 1989). To state a constitutional claim based upon the failure to provide adequate

medical care, a prisoner must show that the prison officials exhibited "deliberate indifference" to his "serious" medical needs. Estelle, 429 U.S. at 104.[1]

To establish deliberate indifference, it is not enough that prison medical personnel have been negligent in diagnosing or treating a prisoner's condition, since it is clear that "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106; Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991). "[I]t is obduracy and wantonness, not inadvertence or error in good faith," that violates the Constitution in "'supplying medical needs.'" Adams v. Poag, 61 F.3d at 1543 (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)). In fact, care provided to a prisoner need not be "perfect, the best obtainable, or even very good." Harris, 941 F.2d at 1510 (quoting Brown v. Beck, 481 F. Supp. 723, 726 (S.D. Ga. 1980)). Nor does a prisoner's mere disagreement with a prison physician concerning the proper course of

---

[1] Estelle did not elaborate upon the meaning of a "serious" medical need but simply recognized a constitutional requirement to attend to any medical condition that could cause "unnecessary suffering" if left untreated. 429 U.S. at 103. This circuit has defined a "serious" medical need as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hill v. DeKalb Regional Youth Detention Center, 40 F.3d 1176, 1187 (11th Cir. 1984)(citations omitted).

7

treatment entitle him to any relief under § 1983. "[T]he question of whether government actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." Adams, 61 F.3d at 1545 (quoting Estelle, 429 U.S. at 107); Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989) (no recovery under § 1983 for disagreements between patient and doctor about what is medically necessary or justifiable). A § 1983 claim, therefore, "does not lie if a prisoner's complaint is directed at the wisdom or quality of the medical treatment he received in prison, even if that treatment is so negligent as to amount to medical malpractice." Brinton v Gaffney, 554 F. Supp. 388, 389 (E.D. Pa. 1983). Indeed, "even gross negligence" is insufficient to establish liability under § 1983. Miller v. King, 384 F.3d 1248, 1251 (11th Cir. 2004).

The Supreme Court, articulating a more precise definition, has stated that deliberate indifference requires the same mental state as criminal recklessness. "The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and

he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).[2] Therefore, an official is not liable for failing to attend to an inmate's serious medical need that he should have, but did not, perceive. Id. at 838.

Even assuming that plaintiff has met his burden of establishing that the alleged deterioration of his eyesight is a serious medical condition implicating the Eighth Amendment,[3] plaintiff has failed to establish that either defendant Holmes or Castor acted with deliberate indifference to his serious medical needs. Specifically, plaintiff has failed to demonstrate that defendants did not take the appropriate measures to treat the alleged deterioration of his eyesight and astigmatism after plaintiff alerted them to the nature of his condition. Doc. 46. Plaintiff is not alleging that prison

---

[2]Farmer held that Eighth Amendment claims have both an objective and a subjective component: the prisoner must (1) allege a deprivation that is "'sufficiently serious'" to implicate constitutional concerns and (2) demonstrate that the prison official had a "'sufficiently culpable state of mind.'" Id. at 834 (quoting Wilson v. Seiter, 501 U.S. 294, 297-98 (1991)). Deliberate indifference, the requisite state of mind for all Eighth Amendment claims except excessive force, requires proof that the defendant disregarded a risk of harm of which he was aware. Farmer, 511 U.S. at 829, 837 (rejecting an objective test and adopting a subjective one for defining the state of mind that makes an official culpable for denying humane conditions of confinement).

[3]Plaintiff has failed to offer any evidence that the deterioration of his eyesight was "diagnosed by a physician as mandating treatment . . . or [was] so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hill, 40 F.3d at 1187.

medical personnel failed to render adequate medical care to him, and he has not named any member of the prison medical staff as a defendant to this action.[4] Instead, plaintiff is pursuing claims against the jail and medical administrator, asserting that they were responsible for approving his request for an eye examination and that their delay in providing him with that examination and corrective lenses caused further deterioration of his eyesight and violated his Eighth Amendment rights.

It is well-settled that a § 1983 plaintiff cannot pursue claims against prison supervisory officials based on theories or respondeat superior or vicarious liability. See Polk County v. Dodson, 454 U.S. 312, 325 (1981); Monell v. Department of Social Services of New York, 436 U.S. 658, 691 (1978). An inmate may demonstrate that an official's inordinate delay in providing necessary treatment without a medical explanation constituted deliberate indifference to his serious medical needs, and numerous cases have found officials liable as a result of their delay in providing a plaintiff with needed medical care. Farrow v. West, 320 F.3d 1235, 1247 (11th Cir.

---

[4]Although plaintiff originally named Dr. Lucas Lewin, the prison physician who treated him on October 1, 2004, as a defendant to this action, the Court dismissed plaintiff's claims against Dr. Lewin after it found that plaintiff had failed to state a claim for relief under § 1983 against him. See Doc. 11.

2003) (unexplained fifteen-month delay in providing plaintiff with dentures created an issue of fact as to whether the physician was deliberately indifferent to plaintiff's serious medical needs). See also Brown v. Hughes, 894 F.2d 1533 (11th Cir. 1990) (unexplained six-hour delay in medical treatment for a broken foot); Thomas v. Town of Davie, 847 F.2d 771, 772 (11th Cir. 1988) (individual in automobile accident was in obvious need of medical attention because of his deteriorating condition); H.C. ex rel. Hewett v. Jarrard, 786 F.2d 1080, 1086-87 (11th Cir. 1986) (three-day delay in treatment for a shoulder injury was excessive); Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 702 (11th Cir. 1985) (four-month delay in treatment for leukemia-related symptoms). The Court must consider the nature of the medical need and the reason for the delay in determining whether the delay amounted to deliberate indifference and violated the inmate's constitutional rights. Farrow, 320 F.3d at 1247 (citing Harris v. Coweta County, 21 F.3d 388, 393-94 (11th Cir. 1994)). In cases where the court has found that delays of days or hours were unacceptable, the inmate's medical condition was so grave that it required immediate medical attention. Id. Where the injury is not so severe, however, a considerable

delay in treatment does not automatically rise to the level of a constitutional violation. Id. "The tolerable length of delay in providing medical attention depends on the nature of the medical need and the reason for the delay." Harris, 21 F.3d at 393-94.

The Chatham County Jail inmate handbook, which is distributed to all inmates during the initial classification and interview process, provides that if an inmate has a medical problem, he must fill out a medical request form. Doc. 41, Ex. A1 at 19. These medical request forms are available from corrections officers. Id. The handbook further instructs inmates that if their medical problem persists after receiving treatment, then they must fill out another medical request form. Id. The policy of the Chatham County Jail for providing eye care for inmates states that such treatment will be provided "on an emergency basis only." Doc. 41, Ex. A1 at 20. The policy further provides that "[a]ny acute threat to eyesight or eye function from injury or disease will be treated by the facility physician," and "[f]or those inmates wishing to have eye exams for chronic deterioration of vision and/or prescriptive glasses, the Unit Counselor will assist [them] in arranging an appointment with a clinic and/or obtaining funds from a

12

charitable organization for corrective lenses." Id.

Although plaintiff submitted letters to defendants on September 11 and 12, 2004 regarding his problems with his eyesight, he did not submit the proper medical request form until September 28, 2004. In that request, plaintiff stated that he was suffering from "extremely poor vision and astigmatism." Doc. 46, Ex. E. Plaintiff also complained that his eyesight was deteriorating and requested an eye examination to prevent further degeneration. Id. Plaintiff was examined by the prison physician on October 1, 2004, some three days later. Doc. 46, Ex. I. He determined that there were "no acute changes" in plaintiff's vision and that plaintiff's visual acuity was 20/100 in both eyes. Id. The doctor noted that plaintiff's vision was "stable" and that plaintiff "may get glasses as need it [sic]." Id. Plaintiff did not make another request for an eye exam until April 28, 2005. Doc. 41, Ex. B. At that time, in accordance with the jail policy, defendant Holmes instructed plaintiff's unit counselor, Cassandra Barnwell, to assist plaintiff in obtaining funds for an outside eye examination. Id., Ex. A. Plaintiff and Ms. Barnwell contacted plaintiff's mother and cousin in this regard. See Doc. 46, Exs. J, K. When plaintiff's relatives were unable to

provide him with any financial assistance, defendant Holmes made an exception to the prison policy and authorized funding for plaintiff's eye examination and corrective lenses. Doc. 41, Ex. A. Plaintiff was examined by a physician outside of the prison on July 15, 2005 and received his eyeglasses on July 27, 2005. Doc. 41, Ex. B.

Plaintiff has failed to proffer any evidence that defendants refused to provide treatment for his deteriorating eyesight.[5] The evidence shows that defendants reacted properly to both of plaintiff's medical requests concerning his eyesight. After plaintiff submitted his first proper medical request for an eye examination on September 28, 2004, prison officials scheduled plaintiff an appointment with the prison physician. The prison physician evaluated plaintiff on October 1, 2004 and determined that his vision was stable and that plaintiff could get glasses as needed. Following this examination, plaintiff did not make another medical request regarding his eyesight until April 28, 2005, and plaintiff has not shown that defendants had any reason to know that his problems continued after the

---

[5]Additionally, although plaintiff contends that he is legally blind and suffers from astigmatism, he fails to offer any medical evidence to support his allegations. See Doc. 46.

initial evaluation until they received this request. In fact, from his initial incarceration until the time he received his glasses, plaintiff filed a total of six medical requests for various complaints as well as twelve grievances. Doc. 41, Exs. A, B. Additionally, plaintiff was involved in an altercation with another inmate over a newspaper on February 9, 2005. Id. Accordingly, absent a specific complaint from plaintiff regarding his eyesight or a medical request seeking another eye examination, defendants had no indication that plaintiff's eyesight was presenting a problem or needed further medical attention.

In response to plaintiff's second request on April 28, 2005, defendants initiated the prison's process for scheduling an eye examination by an out-of-prison physician for an inmate's chronic eyesight deterioration. Defendant Holmes contacted plaintiff's unit counselor to assist plaintiff in securing the funding for the exam. When it became clear that such funding was unavailable, defendant Holmes made an exception to the prison's policy and scheduled plaintiff an appointment with an outside physician. Plaintiff was then evaluated by this physician and received eyeglasses. Although nearly three months elapsed between plaintiff's second medical request for

an eye examination and the time he actually received eyeglasses, plaintiff has failed to show that defendants acted unreasonably in following the CCJ policy with respect to eye examinations and prescription eyeglasses, that this delay exacerbated his vision problems, or that the delay was due to defendant's deliberate indifference to his serious medical needs. Absent such a showing, plaintiff's claims for relief under § 1983 must fail, and defendants' motions for summary judgment should be GRANTED.

V. **Conclusion**

Based on the foregoing, plaintiff has failed to establish that either defendant Holmes or Castor acted with deliberate indifference to his serious medical needs. Accordingly, defendants' motions for summary judgment should be GRANTED and plaintiff's complaint should be DISMISSED.

**SO REPORTED AND RECOMMENDED** this 27 day of April, **2007.**

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

AUBREY BETTIS,                )
                              )
    Plaintiff,           )
                              )
v.                            )   Case No. CV404-217
                              )
McARTHUR HOLMES and           )
LESLIE CASTOR,                )
                              )
    Defendants.          )

# **ORDER**

After a careful <u>de</u> <u>novo</u> review of the record in this case, the Court concurs with the Magistrate Judge's Report and Recommendation, to which objections have been filed. Accordingly, the Report and Recommendation of the Magistrate Judge is adopted as the opinion of the Court.

**SO ORDERED** this \_\_\_\_ day of _____, 2007.

 

_____
B. AVANT EDENFIELD
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | |
|---|---|
| AUBREY BETTIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CV404-217 |
| | ) |
| McARTHUR HOLMES and | ) |
| LESLIE CASTOR, | ) |
| | ) |
| Defendants. | ) |

## ORDER

After a careful <u>de novo</u> review of the record in this case, the Court concurs with the Magistrate Judge's Report and Recommendation, to which no objections have been filed. Accordingly, the Report and Recommendation of the Magistrate Judge is adopted as the opinion of the Court.

**SO ORDERED** this ____ day of _____, 2007.

> B. AVANT EDENFIELD
> UNITED STATES DISTRICT JUDGE
> SOUTHERN DISTRICT OF GEORGIA